Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL BRADY,**<br><br>**Plaintiff,**<br><br>v.<br><br>**OFFICE OF THE COUNTY PROSECUTOR, COUNTY OF BERGEN,** *et al.*,<br><br>**Defendants.** | Civil Action No. 19-16348 (ES) (SCM)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is the motion of defendants State of New Jersey, New Jersey Office of the Attorney General, Office of the County Prosecutor, County of Bergen ("BCPO"), John L. Molinelli, Gurbir S. Grewal, and James Santulli (collectively, "Defendants") to dismiss plaintiff Michael Brady's ("Plaintiff") amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. No. 16). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

### I. BACKGROUND

This action stems from Plaintiff's over four-year pre-trial incarceration and subsequent acquittal of charges for the murder of Tam Marie Pitts-Gaddy ("Pitts-Gaddy") and Pitts-Gaddy's daughter. Plaintiff had a romantic relationship with Pitts-Gaddy. (D.E. No. 5 ("Am. Compl.") ¶ 14). Upon termination of their relationship, Plaintiff remained close with Pitts-Gaddy and her daughter and was accustomed to frequent communications with Pitts-Gaddy. (*Id.* ¶¶ 15–16). On January 30, 2013, Plaintiff grew concerned because Pitts-Gaddy had not returned his calls for an

extended period of time. (*Id.* ¶ 16). As a result, Plaintiff went to Pitts-Gaddy's home, and when no one answered the door, he broke into the home through a window. (*Id.*). A neighbor witnessed the break-in and called the police. (*Id.*). Once inside, Plaintiff found Pitts-Gaddy stabbed to death and her daughter suffocated to death. (*Id.* ¶¶ 17–18). Shortly thereafter, the police arrived, and Plaintiff was taken into custody and charged with homicide, among other charges. (*Id.* ¶¶ 18–20). Plaintiff remained in prison until his case was tried. (*Id.* ¶ 22). Over four years later, on September 16, 2017, a jury acquitted Plaintiff of all charges against him. (*Id.* ¶ 30).

Based on these facts, Plaintiff commenced this action on August 5, 2019, and filed an amended complaint on August 14, 2019. Plaintiff brings claims under 42 U.S.C. § 1983 and various state law claims, including malicious prosecution, wrongful imprisonment, false arrest, and intentional infliction of emotional distress. (*Id.* ¶¶ 32–43).[1] For the reasons that follow, the Court dismisses all claims under § 1983 and declines to exercise supplemental jurisdiction over the state law claims.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(1) Standard

The Court can adjudicate a dispute only if it has subject matter jurisdiction to hear the asserted claims. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (noting that federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto"). "Rule 12(b)(1) governs jurisdictional challenges

---

[1] The Court notes that Plaintiff only alleges two counts in his amended complaint, improperly grouping various claims together. (Am. Compl. ¶¶ 32–36 (alleging various claims for deprivation of civil rights "as a result of violations of the[] Fourth, Sixth and Fourteenth Amendments of the Constitution of the United States, and state common-law rights"); *id.* ¶¶ 37–43 (alleging distinct state law claims for malicious prosecution, wrongful imprisonment and intentional infliction of emotional distress)). Defendants, however, do not raise the issue in their motion so the Court does not reach it here.

to a complaint." *Otto v. Wells Fargo Bank, N.A.*, No. 15-8240, 2016 WL 8677313, at *2 (D.N.J. July 15, 2016).

Because "[t]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction," Defendants' motion is, in-part, considered a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 (3d Cir. 1996) (citing *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98–100 (1984)). Typically, once a Rule 12(b)(1) challenge is raised, the burden shifts to the plaintiff to demonstrate the existence of subject matter jurisdiction. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006). "However, because 'Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense,' and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability." *Garcia v. Knapp*, No. 19017946, 2020 WL 2786930, at *3 (D.N.J. May 29, 2020) (quoting *Christy v. PA Tpk. Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994)).

In deciding a Rule 12(b)(1) motion, "a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed." *Leadbeater v. JPMorgan Chase, N.A.*, No. 16-7655, 2017 WL 4790384, at *3 (D.N.J. Oct. 24, 2017). "When a party moves to dismiss prior to answering the complaint . . . the motion is generally considered a facial attack." *Id.*; *see also Garcia*, 2020 WL 2786930, at *4 ("Defendants, by asserting Eleventh Amendment immunity, raise a facial 12(b)(1) challenge."). In reviewing a facial attack, the Court should consider only the allegations in the complaint, along with documents referenced therein and attached thereto, in the light most favorable to the nonmoving party. *See Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Thus, the motion

is handled much like a 12(b)(6) motion, and allegations in the complaint should be accepted as true. *Leadbeater*, 2017 WL 4790384, at *3.

### B. Rule 12(b)(6) Standard

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotation marks omitted). The Court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. ANALYSIS

### A. Section 1983 Claims

Section 1983 provides a cause of action against a person who, while acting under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within

the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The purpose of § 1983 is, in part, "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158**,** 161 (1992). While on its face § 1983 affords no immunities, the Supreme Court has "accorded certain government officials either absolute or qualified immunity." *Id.* at 163–64.

Here, Defendants argue that Plaintiff's § 1983 claims fail (i) based on sovereign, prosecutorial, and qualified immunity; (ii) because no Defendant constitutes a "person" under § 1983; and (iii) because no specific factual allegations are pleaded against the individual prosecutors. (*See generally* D.E. No. 16–1 ("Defs. Mov. Br.")). Many of these arguments are unrebutted by Plaintiff, who argues only that the prosecutors in this case do not benefit from absolute immunity. (*See generally* D.E. No. 27 ("Pl. Opp'n Br.")). The Court agrees with Defendants that there are multiple grounds for dismissal of the § 1983 claims, though it need not, and does not, address all of Defendants' arguments.

### i. *Sovereign Immunity*

The Eleventh Amendment protects non-consenting states from suits brought in federal court by private citizens seeking money damages. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); U.S. CONST. amend. XI. Eleventh Amendment immunity can extend to state agencies and instrumentalities acting as arms of the state. *Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997). A state entity is characterized as an arm of the state when a judgment against it "would have essentially the same practical consequences as a judgment against the State itself." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 546 (3d Cir. 2007) (quoting *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655,

5

659 (3d Cir.1989)).  Immunity may also extend to individual state officials when they "are sued for damages in their official capacity."  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Nothing in § 1983 abrogates a state's Eleventh Amendment immunity.  *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

Applying these standards to the various Defendants in this lawsuit, the Court concludes that Plaintiff's § 1983 claims must be dismissed against certain Defendants.  To start, the State of New Jersey and the Office of the New Jersey Attorney General are clearly covered by the Eleventh Amendment and are immune from suit.  *See Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 194–95 (3d Cir. 2008); *Mikhaeil v. Santos*, 646 F. App'x. 158, 162 (3d Cir. 2016) (affirming dismissal of § 1983 claims against the State of New Jersey and the Office of the Attorney General based on Eleventh Amendment immunity).  Indeed, Plaintiff does not argue otherwise.  (*See generally* Pl. Opp'n Br.).

With respect to the remaining county defendants—BCPO and the individual prosecutors––the relevant consideration is whether the state is a real party in interest.[2]  *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 857 (3d Cir. 2014).  To make this determination, the Third Circuit considers three factors: "(1) whether the money to pay for the judgment would come from the state; (2) the status of the agency under state law; and (3) what degree of autonomy the agency has."  *Id.* (citing *Fitchik*, 873 F.2d at 659).  The parties do not frame their arguments in terms of the *Fitchik* factors, and instead focus on whether the claims against the BCPO and its employees encompass classic law enforcement and investigative functions during a prosecution.  (Defs. Mov. Br. at 7–8 (citing *Beightler* v. *Office of Essex Cty. Prosecutor*, 342 F. App'x 829 (3d

---

[2]   Plaintiff does not specify whether the individual prosecutors are sued in their official or individual capacities, or both.  To the extent that they are sued in their individual capacities, sovereign immunity does not bar suit.  *Lopez-Siguenza v. Roddy*, No. 13-2005, 2014 WL 1298300, at *7 n.6 (D.N.J. Mar. 31, 2014).

Cir. 2009)); Pl. Opp'n Br. at 11–19; D.E. No. 28 ("Defs. Reply Br.") at 3–4). But the Third Circuit has rejected such an approach. *Estate of Lagano*, 769 F.3d at 857–58 ("[W]e are not bound or persuaded by *Beightler's* statement that the *Fitchik* inquiry is satisfied whenever a county prosecutor engages in classic prosecutorial functions. We therefore conclude that *Fitchik* provides the proper framework for analyzing Eleventh Amendment sovereign immunity as it applies to county prosecutors."). Thus, "[b]ecause the party asserting Eleventh Amendment immunity bears the burden of proving entitlement to it, the Court must find that Defendants fail to meet that burden by omitting necessary discussion of the *Fitchik* factors." *Robinson v. Paulhus*, No. 19-12572, 2020 WL 2732132, at *2 (D.N.J. May 22, 2020). Accordingly, Count I is dismissed on the basis of Eleventh Amendment immunity only as to the State of New Jersey and the New Jersey Office of the Attorney General.

### ii.     *Persons Under Section 1983*

Defendants next argue that even if Plaintiff's § 1983 claims are not barred by Eleventh Amendment immunity, they must be dismissed because no Defendant is a "person" under § 1983. (Defs. Mov. Br. at 8–9). Plaintiff does not address this argument. (*See generally* Pl. Opp'n. Br.). The Court agrees that the § 1983 claims against all Defendants, except for any claim against the prosecutors in their individual capacities, fail for this reason.

States and state agencies are not considered "persons" within the meaning of § 1983, providing another reason for dismissal of the State of New Jersey and the Office of the Attorney General. *Blanciak*, 77 F.3d at 697. The Third Circuit has further held that "state officials acting in their official capacities are not 'persons' under [§] 1983." *Id.* And "[a] prosecutor's office, when engaged in its law enforcement and investigative roles, is considered to be a state agency and is therefore not a 'person' subject to suit under [§ 1983]." *Henry v. Essex Cty. Prosecutor's*

7

*Office*, No. 16-8566, 2017 WL 1243146, at *3 (D.N.J. Feb. 24, 2017) (citing *Estate of Lagano*, 769 F.3d at 854–55); *see also Taylor v. State of New Jersey*, No. 18-11310, 2019 WL 460220, at *2 (D.N.J. Feb. 6, 2019) (collecting cases). On the other hand, when "prosecutors perform administrative functions unrelated to the duties involved in criminal prosecutions, they are not acting as arms of the state, but as county officials who remain subject to § 1983 suits." *Hof v. Janci*, No. 17-295, 2017 WL 3923296, at *5 (D.N.J. Sept. 7, 2017) (internal quotation marks and citations omitted).

Here, Plaintiff alleges that "investigatory misconduct" by Defendants led to his continued prosecution and imprisonment for a crime he was ultimately acquitted of. (*See generally* Am. Compl.; Pl. Opp'n Br. at 1). Specifically, Plaintiff alleges that Defendants (i) ignored the opinion of their own footprint expert; (ii) ignored DNA evidence in the hand of the victim; (iii) ignored fingerprints on a bottle of cleaner found in Pitts-Gaddy's home; and (iv) unreasonably delayed the investigation and trial. (Am. Compl. ¶¶ 24–28 & 35). Preliminarily, it is impossible for the Court to determine whether and to what extent the BCPO and each individual prosecutor were involved in the alleged "investigatory misconduct," without more specific allegations showing "how each individual violated [Plaintiff's] constitutional rights." *See Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005); *see also Fraenkel v. Garcia*, No. 18-9281, 2019 WL 2619130, at *6 (D.N.J. June 26, 2019) ("The Complaint fails to meet the pleading standard necessary to bring a [§] 1983 claim against multiple defendants."). But regardless, Plaintiff's allegations are all squarely related to the investigatory and law enforcement duties involved in criminal prosecution. *Compare Carlton v. Bally's Park Place Casino*, No. 19-19613, 2020 WL 1673988, at *2 (D.N.J. Apr. 6, 2020) (concluding that allegations that a prosecutor's office overlooked key documents were based "entirely on the [o]ffice's law enforcement and investigative roles"), *with Estate of*

*Lagano*, 769 F.3d at 855 (describing allegations not considered classic functions of law enforcement or criminal investigators, including allegations about personal and business relationships). Again, Plaintiff provides no argument to the contrary. (*See generally* Pl. Opp'n Br.). Instead, Plaintiff repeatedly emphasizes that the prosecutors' actions constitute "investigatory misconduct" in an apparent attempt to avoid absolute prosecutorial immunity—an argument which the Court addresses below. (*See e.g.*, Pl. Opp'n Br. at 2, 3, 8, 13 & 19). But Plaintiff does not support this argument with case law about when a prosecutor's office qualifies as a "person" under § 1983. Accordingly, based on the allegations in the amended complaint and the lack of argument to the contrary, the Court concludes that both the BCPO and the individual prosecutors in their official capacities were acting as arms of the state and therefore are not persons subject to suit under § 1983.

### iii. *Prosecutorial Immunity*

The only surviving § 1983 claims are any claims alleged against the prosecutors in their individual capacities. Defendants argue that absolute prosecutorial immunity applies to the prosecutor defendants. (Defs. Mov. Br. at 9–11). The Court agrees.

Prosecutors "are immune from suit under § 1983 when 'act[ing] within the scope of [their] duties in initiating and pursuing a criminal prosecution.'" *LeBlanc v. Stedman*, 483 F. App'x 666, 669 (3d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 422–23 (1976)). Prosecutorial immunity "is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties." *Imbler*, 424 U.S. at 422–23. Absolute prosecutorial immunity exists when prosecutors are working within the judicial process, thereby functioning as the state's advocate. *Id.* at 430; *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). Thus, initiating a prosecution and presenting the state's case constitutes advocacy that

9

immunizes prosecutors from § 1983 claims. *Id.* at 431. And other activities "intimately associated with the judicial phase of the criminal process" are also protected by prosecutorial immunity. *Burns v. Reed*, 500 U.S. 478, 486 (1991). Nevertheless, a prosecutor is not entitled to absolute immunity for actions undertaken in some other function. *See, e.g.*, *Buckley v. Fitzsimmons*, 509 U.S. 259, 276–78 (1993) (prosecutor not entitled to absolute immunity when holding press conference or fabricating evidence during a preliminary investigation); *see also Yarris v. Cty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006) (prosecutor not entitled to immunity for deliberately destroying exculpatory evidence). The prosecutor bears the heavy burden of demonstrating entitlement to absolute immunity. *Odd*, 538 F.3d at 207.

The parties seemingly agree that applying these standards necessitates a functional approach, requiring the Court to look not just at who is being sued, but what the complained of conduct entails, and how such conduct is tied to the judicial process. (Pl. Opp'n Br. at 11–12; Defs. Reply Br. at 8–12); *see Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991). Indeed, the Third Circuit has "rejected bright-line rules that would treat the timing of the prosecutor's action (*e.g.* pre- or postindictment), or its location (*i.e.* in- or out-of-court), as dispositive." *Odd*, 538 F.3d at 210. Though, such considerations are relevant "to the extent that they bear upon the nature of the function the prosecutor is performing." *Id.* To that end, the Third Circuit has held "that where a prosecutor's role as advocate has not yet begun, or where it has concluded, absolute immunity does not attach," and "that the period during which prosecutors are most likely functioning in a 'quasi-judicial' capacity is the time between indictment and dismissal, acquittal, or conviction." *Id.* (citing *Yarris*, 465 F.3d 129).

Following this approach, the Court concludes that based on the allegations in the amended complaint, the individual prosecutors are entitled to absolute prosecutorial immunity from

Plaintiff's § 1983 claims.³ The amended complaint suggests that all of the complained of conduct occurred after Plaintiff was formally charged with murder. Specifically, Plaintiff alleges that he was arrested and charged with homicide on the same day that he was found in Pitts-Gaddy's home, on January 30, 2013. (Am. Compl. ¶¶ 16–20). Plaintiff pleaded not guilty to the charges on February 1, 2013. (*Id.* ¶ 21). Nothing in the amended complaint suggests that any of the prosecutors were involved in Plaintiff's matter prior to Plaintiff being charged with homicide on the same day he was arrested.⁴ To the contrary, the amended complaint only suggests that the prosecutors got involved in the case sometime after Plaintiff's arrest. (*Id.* ¶ 4 (alleging that Molinelli was "responsible for the *continued* prosecution and imprisonment of Plaintiff") (emphasis added); *id.* ¶ 7 (indicating that Grewal was the prosecutor "at the time of Plaintiff's trial in 2017" and was "ultimately responsible for the continued prosecution and imprisonment of Plaintiff"); *id.* ¶ 8 (alleging that Santulli was the assistant prosecutor "at the time of Plaintiff's trial in 2017," and "was primarily responsible for prosecuting the case against Plaintiff")). Thus, the face of the amended complaint suggests that the prosecutors' alleged actions are connected to Plaintiff's prosecution. *See Weimer v. Cty. of Fayette, Pennsylvania*, No. 19-1823, 2020 WL 5000030, at *8–9 (3d Cir. Aug. 25, 2020).

That said, the timing of the actions is not dispositive; but the nature of the conduct compels the same conclusion. The crux of the amended complaint relates to the prosecutors' consideration of evidence, and their decisions as to what evidence to rely on in continuing Plaintiff's prosecution.

---

³ While absolute immunity is typically assessed as to each *claim*, *Fogle v. Sokol*, 957 F.3d 148, 161 (3d Cir. 2020), here, Plaintiff has stated his § 1983 claims collectively in Count I, and those claims hinge on the same conduct. (Am. Compl. ¶¶ 32–36).

⁴ Again, Plaintiff's general allegations against Defendants make it difficult to evaluate the claims and immunity as it relates to each defendant. But because the allegations as a whole are not enough to survive prosecutorial immunity as to any defendant, the Court need not address this issue further. *See Costino v. Anderson*, No. 14-6940, 2016 WL 7374531, at *7 (D.N.J. Dec. 20, 2016) (dismissing claims against prosecutors based on prosecutorial immunity and noting that the operative complaint detailed "no facts specific to" the individual prosecutors).

This type of conduct is more akin to "the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial" than it is to the type of case where a prosecutor is "searching for clues" to establish probable cause for an arrest. *Buckley*, 509 U.S. at 273. And a survey of relevant case law suggests that all of the conduct alleged in the amended complaint falls within the "judicial phase of the criminal process." *See Burns*, 500 U.S. at 480; *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992) ("Evidence obtained at or after the filing is likely to be connected with an existing prosecution, and is absolutely protected."); *id.* ("A prosecutor has immunity for both the use and solicitation of evidence in connection with a prosecution."); *see also Schrob*, 948 at 1411 ("A prosecutor's alleged failure to properly investigate before initiating a prosecution is also conduct within the scope of absolute immunity.") (collecting cases); *Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010) (absolute immunity barred claims that the prosecutor improperly continued to prosecute a case when he should have dismissed it). In other words, the amended complaint focuses on the fact that there was exculpatory evidence. (Am. Compl. ¶¶ 24–28). But those allegations fall well short of accusing any particular Defendant of impropriety during the investigation of the case.

Plaintiff devotes nearly his entire opposition brief to arguing that the complained of conduct is not immunized because it is investigatory in nature, making the prosecutors similarly situated to police officers.[5] But the cases Plaintiff relies on where courts have declined to apply absolute immunity are factually distinct from the present case. *See e.g.*, *Odd.*, 538 F.3d at 210 (no absolute immunity for prosecutors who failed to fulfil their administrative duties to ensure the

---

[5] Plaintiff argues that "Defendants concede in their brief that the prosecutors in this case acted not only as advocates, but also 'in their classic law enforcement and investigatory functions[.]'" (Pl. Opp'n Br. at 17). However, any admission or court finding that the prosecutors were engaged in "investigative" conduct does not end the inquiry. Rather, the Court must look at whether any such investigative conduct is intimately associated with judicial proceedings. *See Buckley*, 509 U.S. at 273 ("A prosecutor's administrative duties and those investigatory functions *that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings* are not entitled to absolute immunity.") (emphasis added).

release of third-parties being held as witnesses; one prosecutor acted during a period of judicial inactivity and the other after his role in a judicial capacity had concluded); *Buckley*, 509 U.S. at 275–77 (holding that prosecutors were not entitled to absolute immunity for (i) fabricating false evidence well before an indictment had issued and prior to any judicial proceeding; and (ii) making false public statements out of court during public announcement of indictment to the press); *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997) (declining to apply absolute immunity to claims that a prosecutor made false testimony in "the evidentiary component of an application for an arrest warrant," because such testimony "is the function of the witness, not of the lawyer"). Nor can the Court agree with Plaintiff that the actions alleged here are the type of acts that are so egregious that they "fall wholly outside the prosecutorial role no matter when or where they are committed" such as "destroying exculpatory evidence," *Odd*, 538 F.3d at 211, or pre-trial "fabrication of evidence," *Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003). (*See* Pl. Opp'n Br. at 15–16 (collecting cases)). At most, the amended complaint alleges that the prosecutors ignored allegedly exculpatory evidence in prosecuting the case against Plaintiff. But there are no allegations suggesting the type of "conscious shocking misconduct" that Plaintiff suggests would require a different result. (Pl. Opp'n Br. at 15).

Accordingly, Count I is dismissed against the prosecutor Defendants in their individual capacity on the basis of prosecutorial immunity. *Pierre*, 2018 WL 5801549, at *8.

### B.   State Law Tort Claims

Finally, Defendants argue several grounds for dismissal of the state law tort claims presented in Count II. But the Court does not reach these arguments because, to the extent any such state law claims are alleged, the Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367; *Washington v. Specialty Risk Servs.*, No. 12-1393, 2012 WL 3528051, at *2 (D.N.J.

Aug. 15, 2012) (noting that "[w]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so") (emphasis in original) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)). Accordingly, these claims are also dismissed.

### C.    Leave to Amend

Plaintiff requests an opportunity to amend his complaint to cure any pleading deficiencies identified by the Court. (Pl. Opp'n. Br. at 9). The Court grants this request only as to any claims against BCPO and the individual prosecutor Defendants. Leave to amend the § 1983 claims against the State of New Jersey and the New Jersey Office of the Attorney General is denied because amendment of those claims would be futile.[6] Plaintiff may also include in any second amended complaint any of the state law claims over which this Court may exercise supplemental jurisdiction. Alternatively, if Plaintiff decides not to reassert claims that provide this Court with subject matter jurisdiction, Plaintiff shall notify the Court in writing on the docket. The Court will then close this matter, providing Plaintiff the opportunity to proceed with a suit as to his remaining claims in state court.

---

[6] Because the Court's dismissal of certain claims for lack of subject matter jurisdiction is not an adjudication on the merits, those claims must be dismissed *without prejudice*. *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999). But amendment of those claims would be futile. And to the extent the Court does have jurisdiction, dismissal *with prejudice* is warranted for the additional reason that the State of New Jersey and the New Jersey Office of the Attorney General are not "persons" under 42 U.S.C. § 1983. *See Drayton v. Monmouth Cty. Corr. Inst. Sheriff's Dep't*, No. 19-22113, 2020 WL 207711, at *1 (D.N.J. Jan. 14, 2020); *Pittman v. Middlesex Cty. Prob. Dep't*, No. 14-1568, 2017 WL 1129592, at *3 (D.N.J. Mar. 24, 2017).

### IV.  CONCLUSION

For the forgoing reasons, the Court GRANTS Defendants' motion to dismiss. Plaintiff's § 1983 claims are dismissed, and the Court declines to exercise supplemental jurisdiction over remaining state law claims. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
